**VILLAGE OF CREEDMOOR and Heep Trusts 1 & 2, Appellant,**

v.

**FROST NATIONAL BANK, Trustee of the Z.T. Scott, Jr., et al. Trust Under the Will of Z.T. Scott and City of Austin, Appellees.**

No. 3–90–150–CV.

Court of Appeals of Texas, Austin.

April 17, 1991.

Rehearing Overruled June 5, 1991.

Donald E. Bird, Austin for Village of Creedmoor.

W. Thomas Buckle, Scanlan & Buckle, Austin, for Heep Trusts 1 & 2.

Iris Jones, City Atty., Scott Smyth, Asst. City Atty., Austin, for City of Austin.

James K. Peden, III, Strasburger & Price Armbrust & Brown, Dallas, for Frost Nat. Bank, Trustee of the Z.T. Scott, Jr., et al. Trust under the Will of Z.T. Scott.

Before ABOUSSIE, POWERS and KIDD, JJ.

KIDD, Justice.

This is a municipal law case. In 1989, the Village of Creedmoor ("Creedmoor") annexed 234 acres immediately adjacent to its city limits. Several weeks later, Creedmoor attempted to enjoin certain activities that Texas Disposal Systems, Inc. ("TDS") was conducting on the annexed property. The Heep Trusts 1 and 2 ("Heep"), owners of a portion of the property Creedmoor annexed, later intervened on behalf of Creedmoor. Frost National Bank ("Frost"), as trustee of a portion of the property located within the 234–acre

tract, and the City of Austin intervened on the side of TDS, arguing that, because the property in question was within the City of Austin's extraterritorial jurisdiction ("ETJ"), the attempted annexation was void. The trial court granted Frost's motion for summary judgment and declared that Creedmoor's annexation of the 234–acre tract was void *ab initio* because the annexed property was within the exclusive ETJ of the City of Austin. Creedmoor and Heep now appeal the summary-judgment ruling. We will affirm the judgment of the trial court.

## STATUTORY SCHEME

The concept of ETJs did not exist in Texas until 1963. Before that date, conflicts between municipalities over boundaries were resolved by the "first in time" rule. The "first in time" rule rewarded the entity taking the first legal steps to create or expand a municipality with exclusive jurisdiction over the area sought to be incorporated or annexed. *Beyer v. Templeton*, 147 Tex. 94, 212 S.W.2d 134, 138 (1948); *City of Houston v. State*, 142 Tex. 190, 176 S.W.2d 928, 930 (1943); *State ex rel. George v. Baker*, 120 Tex. 307, 40 S.W.2d 41, 43 (1931). As the supreme court stated in *Beyer*, "[T]he rule in this State is that whoever first commences legal proceedings asserting authority over the territory in question thereby acquires jurisdiction over same, and this jurisdiction cannot be defeated thereafter by the adverse party's subsequently attempting to exercise jurisdiction." 212 S.W.2d at 138.

■ The principle of first-in-time priority is still important in municipal law. *See Universal City v. City of Selma*, 514 S.W.2d 64, 70 (Tex.Civ.App.1974, writ ref'd n.r.e.); *Fuller Springs v. State ex rel. City of Lufkin*, 503 S.W.2d 351, 352 (Tex.Civ.App.1973), rev'd on other grounds, 513 S.W.2d 17 (Tex.1974); *City of Arlington v. City of Grand Prairie*, 451 S.W.2d 284, 291 (Tex.Civ.App.1970, writ ref'd n.r.e.). Whether and when a municipality first exercises jurisdiction over an area, however, is no longer always determined by legal proceedings. Instead, the legislature has created the concept of ETJs to determine whether a municipality may exercise jurisdiction over a particular geographic area near an incorporated municipality. *See generally* Municipal Annexation Act, 1963 Tex.Gen.Laws, ch. 160, art. I, at 447–55 [Tex.Rev.Civ.Stat.Ann. art. 970a (1964), since repealed, 1987 Tex.Gen.Laws, ch. 149, § 49, at 1306, since codified and amended, Tex.Loc.Gov't Code Ann. § 41.001–43.904 (1987 & Supp.1991)].[1]

The legislature enacted the Municipal Corporation Act in 1963 to resolve conflicting claims between growing and expanding cities. *City of Waco v. City of McGregor*, 523 S.W.2d 649, 653 (Tex.1975). The legislature declared that ETJs would be designated in order to further the state's policy of promoting and protecting the general health, safety, and welfare of persons residing in, and adjacent to, municipalities. Tex.Loc.Gov't Code Ann. § 42.001 (1988). Thus, the legislature has allowed a municipality to claim a designated amount of unincorporated area adjacent and contiguous to the municipality's corporate boundaries as its ETJ. *Id.* at § 42.021. The unincorporated area that a municipality is allowed to claim as its ETJ is determined by the population of the municipality, and ranges from one-half mile for municipalities with fewer than 5,000 inhabitants to five miles for municipalities with 100,000 or more inhabitants. *Id.*

The legislature anticipated that a concentrated population located within a municipality's ETJ might desire to form its own government instead of being governed by a larger municipality some distance away. The legislature therefore created a mechanism that permits incorporation of a municipality *within* the ETJ of a first-in-time existing municipality. *See* Tex.Loc.Gov't Code Ann. § 42.041 (1988). Section 42.041 requires the incorporating municipality first to attempt to obtain the existing municipality's written consent to incorporation. *Id.* at § 42.041(a). If the governing body of the existing municipality refus-

---

**1.** Hereinafter all citations are to the Local Government Code.

es to consent to the proposed incorporation, the qualified voters and landowners in the area of the proposed municipality may petition the governing body to annex the area. *Id.* at § 42.041(b). If the governing body fails or refuses to annex the area within six months after receiving the petition, the existing municipality is deemed to have consented to the incorporation of the proposed municipality. *Id.* These incorporation procedures apply only to the proposed municipality's area located within the ETJ of the existing municipality. *Id.* at § 42.041(e).

The legislature also established rules regarding the procedures to be used when an existing municipality's ETJ is reduced or expanded. A municipality's ETJ cannot be reduced unless its governing body consents to the reduction in writing.[2] *Id.* at § 42.023. Likewise, the expansion of one municipality's ETJ through annexation, request, or increase in the number of inhabitants cannot include any area that extends into the existing ETJ of another municipality. *Id.* at § 42.022. The legislature's determination of when ETJs may be reduced and expanded has therefore remained consistent with the first-in-time rule as developed at common law.

### THE CONTROVERSY

It is undisputed that Creedmoor legally incorporated as a municipal corporation within the City of Austin's ETJ pursuant to § 42.041. However, a brief recitation of the facts of this case will help frame the issues to be decided on appeal.

In 1980, the Village of Creedmoor requested the City of Austin's permission to incorporate the 1,275–acre tract that now lies within the corporate city limits of Creedmoor. Between eighty and ninety percent of this tract was located within the City of Austin's five-mile ETJ, while a small southern portion of the tract lay outside of Austin's ETJ (see attached map). Creedmoor's request to incorporate was denied by the City of Austin. Thereafter, Creedmoor petitioned to be annexed by the City of Austin. This request for annexa-

tion was never acted upon. As a result and pursuant to statutory authority, eight months later, a majority of the voters in Creedmoor voted to incorporate their village. On January 18, 1982, following a favorable vote thereon, Creedmoor was formally certified as a municipal corporation.

This controversy began on June 1, 1989, when Creedmoor passed a city ordinance annexing a 234–acre tract of land located to the northwest of Creedmoor and within one-half mile of the Creedmoor city limits. Creedmoor annexed the property under the belief that, as a municipality of fewer than 5,000 people, it could annex any property lying within one-half mile of its corporate boundaries, the supposed limits of its ETJ. Roughly fifty percent of the annexed tract was owned by Robert Whitson as trustee for the Z.T. Scott trust and was under a contract of sale to TDS. On June 23, 1989, Creedmoor petitioned the Travis County district court for a temporary restraining order and an injunction to prevent TDS and Whitson from building a roadway on a portion of this tract because such construction would violate a Creedmoor city ordinance. Heep, which owned sixty-five acres of the 234–acre annexed tract, intervened on behalf of Creedmoor. Frost, for which Whitson served as a director, intervened on behalf of TDS and Whitson, as did the City of Austin.

Frost moved for summary judgment, arguing that Creedmoor's initial annexation of the 234–acre tract was unlawful, void, and of no effect since Creedmoor had annexed a portion of the City of Austin's ETJ in violation of §§ 42.022 and 42.023. Creedmoor and Heep filed cross-motions for summary judgment, arguing that § 42.021 provided Creedmoor with a one-half mile ETJ and that the annexation was valid because the 234–acre tract was within its one-half mile ETJ. The district court granted Frost's motion for summary judgment and declared that Creedmoor's June 1, 1989, annexation of the 234–acre tract of land was unlawful, void and of no effect *ab initio* because the tract "was, is, and con-

---

**2.** An exception to this rule, which is inapplicable to this case, occurs in cases of judicial apportionment of ETJs under Tex.Loc.Gov't Code Ann. § 42.901 (1988).

tinues to be within the exclusive extraterritorial jurisdiction of the City of Austin." [3]

## DISCUSSION AND HOLDINGS

Appellants argue on appeal that the trial court erred in granting summary judgment for appellees and in declaring Creedmoor's annexation of the 234-acre tract void. Appellants contend the trial court erred in determining that Creedmoor was not entitled to any ETJ and that the 234-acre tract was located exclusively within the City of Austin's ETJ. Thus, the issue to be decided is whether a municipality formed wholly, or in part, within a neighboring municipality's ETJ, is entitled, upon its incorporation, to an ETJ of its own which supplants the ETJ of the first-in-time municipality.

Appellants suggest that § 42.021 should be construed so as to allow *all* municipalities with fewer than 5,000 inhabitants to exercise jurisdiction over a one-half mile ETJ, even when the incorporating municipality is formed wholly or in part within another municipality's ETJ. However, § 42.023 states that a municipality's ETJ cannot be reduced unless the governing body of the municipality consents *in writing* to such reduction. It is undisputed that the City of Austin has never consented in writing to the reduction of its ETJ. Appellants admit that "the existence of the Village of Creedmoor's extraterritorial jurisdiction does reduce the extraterritorial jurisdiction of the City of Austin," but suggest that the implied consent Creedmoor obtained from the City of Austin to incorporate under § 42.041 also served as consent to the reduction of Austin's ETJ.

We initially note that several cases have addressed the issue of whether a city may annex territory within the ETJ of another city. These cases have held that an ordinance that attempts to annex territory within the ETJ or municipal boundaries of another city is void. *See City of Waco v. City of McGregor*, 523 S.W.2d 649, 653 (Tex.1975); *City of Houston v. Savely*, 708 S.W.2d 879, 887 (Tex.App.1986, writ ref'd

n.r.e.), cert. denied., 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 698 (1987); *City of Duncanville v. City of Woodland Hills*, 484 S.W.2d 111, 113 (Tex.Civ.App.1972, writ ref'd n.r.e., 489 S.W.2d 557 (Tex.1972)).

The specific issue of whether an incorporating municipality may deprive a first-in-time municipality of its ETJ without its written consent has been addressed in several cases. In *Savely*, the issue was whether Nassau Bay, a city incorporated in 1970 and partially formed out of the City of Houston's ETJ, could claim an ETJ of its own in the area in which a prospective overlap of ETJs would occur. The court held that, as a matter of law, Nassau Bay had no ETJ in the area of potential overlap because the City of Houston never released any of its ETJ to Nassau Bay. *Savely*, 708 S.W.2d at 886. The holding in *Savely* comports with the legislature's mandate in § 42.023 that a municipality must give its written consent for its ETJ to be reduced.

A similar issue was recently addressed in *City of Bridge City v. City of Port Arthur*, 792 S.W.2d 217 (Tex.App.1990, writ denied). In that case, Bridge City incorporated entirely from Port Arthur's ETJ. Port Arthur consented to Bridge City's incorporation and relinquished only that part of its ETJ that was necessary to form the incorporated city limits of Bridge City itself. Bridge City later attempted to have Port Arthur relinquish more of its ETJ, and Port Arthur refused. *Id.* at 224, 230. Bridge City then sued to force Port Arthur to relinquish more of its ETJ in order to allow Bridge City to form its own ETJ. On appeal, the court first noted that Port Arthur never consented in writing to relinquish any of its ETJ in order for Bridge City to form its own ETJ. Furthermore, the court stated, "it is clear that Bridge City has no extraterritorial jurisdiction where its corporate boundaries adjoin Port Arthur's extraterritorial jurisdiction." 792 S.W.2d at 230.

There are clearly circumstances where a municipality is incorporated with no ETJ. In *Universal City v. City of Selma*, 514

---

**3.** Hereinafter Creedmoor and Heep will be referred to as appellants, while Frost and the City of Austin will be referred to as appellees. Whitson and TDS are not parties to this appeal.

S.W.2d 64 (Tex.Civ.App.1974, writ ref'd n.r.e.), the City of Selma and Universal City were engaged in a dispute over a tract of property that each city claimed was within its ETJ. The City of Selma argued that it acquired the tract as part of its ETJ when it filed its application for incorporation. The court rejected this argument, stating that a municipality obtains an ETJ only "as available upon its incorporation." *Id.* at 71.

■ The holdings in these cases and the clear wording of § 42.023 lead us to conclude that, upon incorporation, Creedmoor did not acquire an ETJ in any area that overlapped the preexisting ETJ of the City of Austin. Creedmoor was therefore required to obtain the City of Austin's written consent before annexing any property within the City of Austin's ETJ.

Appellees argue that a municipality which incorporates within another municipality's ETJ pursuant to § 42.041 is entitled to exercise jurisdiction *only* over the territory located within the corporate boundaries of the proposed municipality when the incorporating municipality's prospective ETJ would overlap with the existing municipality's ETJ. We agree. Section 42.041(e) unequivocally states that § 42.041 allows incorporation only of the "proposed municipality's *area* located in the extraterritorial jurisdiction of the existing municipality." Tex.Loc.Gov't Code Ann. § 42.041(e) (1988) (emphasis added). The area to be incorporated is determined by the area described in the incorporating municipality's petition for consent and in the petition for annexation. *Friendship Village v. State,* 738 S.W.2d 12, 15 (Tex. App.1987, writ ref'd n.r.e.). Creedmoor petitioned to incorporate only the 1275–acre tract that now lies within its corporate boundaries. Creedmoor cannot exercise jurisdiction over any other territory, including the 234–acre tract at issue in this case, unless that territory is outside the City of Austin's ETJ.

■ We hold that a municipality formed wholly, or in part, within a neighboring municipality's ETJ is not entitled, upon incorporation, to its own ETJ where its prospective ETJ would overlap the existing ETJ of the first-in-time municipality. A municipality may annex additional territory only if that territory is adjacent to the annexing municipality's existing boundaries and if the adjacent property is within the ETJ of the annexing municipality. *City of Wichita Falls v. State ex rel. Vogtsberger,* 533 S.W.2d 927, 929 (Tex. 1976). Although the 234–acre tract at issue was adjacent to Creedmoor, the tract was not within Creedmoor's ETJ because Creedmoor had no ETJ where the City of Austin's ETJ abutted Creedmoor's corporate boundaries. We therefore hold that the trial court properly granted appellees' motion for summary judgment. Creedmoor's annexation of the 234–acre tract was unlawful, void, and of no effect *ab initio* because the tract was, is, and continues to be within the ETJ of the City of Austin.

The judgment of the trial court is affirmed.

APPENDIX