CITY OF CRESSON V. CITY OF GRANBURY

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-227-CV

CITY OF CRESSON, TEXAS APPELLANT

V.

CITY OF GRANBURY, TEXAS APPELLEE

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

OPINION ON REHEARING

------------

After reviewing appellee City of Granbury, Texas’s motion for rehearing, we deny the motion.  However, to clarify matters raised in Granbury’s motion, we withdraw our April 19, 2007 opinion and judgment and substitute the following in its place.

Introduction

This case involves a municipal annexation dispute in which the cities of Cresson and Granbury both claim jurisdiction over property.  Appellant, the City of Cresson, appeals from the district court’s (1) summary judgment in favor of appellee, the City of Granbury, and (2) denial of summary judgment for Cresson.  In three issues, Cresson contends that the provisions of the Municipal Annexation Act control over the common law first-in-time rule and that its extraterritorial jurisdiction (ETJ) expansion ordinances passed at the request of property owners are not void as claimed by Granbury.  We reverse the judgment in favor of Granbury and render judgment for Cresson.

Background Facts

 On May 3, 2005, Granbury adopted a resolution (Resolution) directing its staff to prepare a service plan and to call two sets of public hearings to accomplish a series of five, one-mile
(footnote: 1) annexations stretching along State Highway 377 between Granbury and Cresson.
(footnote: 2)  The entire area described in the Resolution began at the then-existing city limits of Granbury and extended along Highway 377 northeast towards, and terminating at, Cresson’s then-existing ETJ.
(footnote: 3)  The Resolution provided for the annexation to be accomplished in immediate sequential order; in other words, after voting on the annexation ordinance for the first one-mile tract, Granbury would then immediately vote on the second, third, fourth, and fifth annexation ordinances in order.

Cresson has an ETJ of one-half mile, and Granbury has an ETJ of one mile. 
 At the time Granbury passed the Resolution, only the first mile of the land described in the Resolution was then within Granbury’s ETJ.  The remaining four consecutive one-mile areas described in the Resolution (the Disputed Tracts) were not included in any city’s ETJ.

After Granbury passed the Resolution, several owners of land included within the Disputed Tracts petitioned Cresson for their land to be included within Cresson’s ETJ.  Then, Granbury conducted two hearings on its five proposed annexation ordinances—as required by the Resolution and state law—on May 17, 2005 and May 19, 2005.

On June 3, 2005, before the Granbury city council could vote on the annexation ordinances proposed in the Resolution, Cresson adopted and approved four ordinances accepting the landowners’ petitions to include the Disputed Tracts within Cresson’s ETJ and expanding Cresson’s ETJ accordingly.  On June 21, 2005, during one counsel session Granbury adopted the five sequential annexation ordinances proposed by the Resolution.  The first ordinance annexed the one-mile tract already included within Granbury’s then-existing ETJ; the second through fifth ordinances annexed the Disputed Tracts.  Cresson had already passed an additional ordinance on June 14 and then passed another on June 28, 2005, expanding its ETJ to include additional property of the landowners who had petitioned to be included within its ETJ.  None of this property was included within the area purported to be annexed by Granbury in accordance with the Resolution; however, Granbury nonetheless challenges Cresson’s June 3, 2005 and June 28, 2005 ordinances as void because it claims that the property described in those ordinances is now included within its ETJ as extended by its annexation of the Disputed Tracts.
(footnote: 4) 

Cresson filed suit seeking a declaration that the final four annexations adopted by Granbury on June 21, 2005 are void because the Disputed Tracts were already in Cresson’s ETJ.  Granbury filed an amended answer and counterclaim seeking to have all of Cresson’s ETJ expansion ordinances declared void.  The parties filed competing motions for summary judgment.  The trial court granted Granbury’s motion
(footnote: 5) and signed a final judgment ordering that Cresson’s June 3, 14, and 28, 2005 ETJ expansion ordinances are void, and that the five sequential annexation ordinances adopted by Granbury on June 21, 2005 are valid.

Standard of Review

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties’ summary judgment evidence and determine all questions presented.  
Valence Operating Co. v. Dorsett
, 164 S.W.3d 656, 661 (Tex. 2005).  The reviewing court should render the judgment that the trial court should have rendered.  
Id
.

A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim.  
See 
Tex. R. Civ. P.
 166a(a), (c); 
MMP, Ltd. v. Jones
, 710 S.W.2d 59, 60 (Tex. 1986).  A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.  
IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason
,
 
143 S.W.3d 794, 798 (Tex. 2004); 
see
 
Tex. R. Civ. P.
 166a(b), (c).

When
 
reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant’s favor.  
Mason
,
 
143 S.W.3d at 798.  Questions of law are appropriate matters for summary judgment.  
Rhone-Poulenc, Inc. v. Steel
, 997 S.W.2d 217, 223 (Tex. 1999); 
Westchester Fire Ins. Co. v. Admiral Ins. Co
., 152 S.W.3d 172, 178 (Tex. App.—Fort Worth 2004, pet. filed) (op. on reh’g).

Issues on Appeal

Cresson contends that the trial court erred by concluding that its June 3, 2005 ordinances expanding its ETJ to include the Disputed Tracts, and its June 14 and 28, 2005 ordinances including land contiguous to the Disputed Tracts within its ETJ, are void and that Granbury’s June 21, 2005 ordinances annexing the Disputed Tracts are valid.  According to Cresson, Granbury’s ETJ did not expand to include the Disputed Tracts when Granbury passed the Resolution; consequently, on June 3, 2005, Granbury had no claim to the Disputed Tracts and Cresson had the right to include the Disputed Tracts within its ETJ, making Granbury’s subsequent annexation of the properties invalid under the local government code.  
See
 
Tex. Loc. Gov’t Code Ann
. §§ 42.023, 43.051 (Vernon 1999).  Granbury contends that the common law first-in-time rule controls and that by indicating in the Resolution its intention to sequentially annex the five tracts at the same time, it acquired priority over Cresson as to the Disputed Tracts upon passage of its Resolution.

Applicable Law
 

Before passage of the Municipal Annexation Act in 1963, cities’ competing claims to property were governed by the common law “first-in-time” rule.  
City of Roanoke v. Town of Westlake
, 111 S.W.3d 617, 630 (Tex. App.—Fort Worth 2003, pet. denied).  This rule provided that the first municipality to 
begin
 annexation procedures on unclaimed territory obtained exclusive jurisdiction over that property.  
City of San Antonio v. Boerne
, 111 S.W.3d 22, 27 (Tex. 2003); 
City of Roanoke
, 111 S.W.3d at 630; 
Village of Creedmoor v. Frost Nat’l Bank
, 808 S.W.2d 617, 618 (Tex. App.—Austin 1991, writ denied).
  The Texas Supreme Court has described the effect of annexation in accordance with the first-in-time rule as follows:

This virtually unbridled annexation authority enabled cities to claim territory without incurring any obligation to provide new services or to formally annex the designated property.  The result, as noted by one commentator, was that “cities were quick to engage in annexation wars and to stake [their] claim[s].”

   

Boerne
, 111 S.W.3d at 27 (citations omitted).

The legislature enacted the Municipal Annexation Act in 1963 to resolve conflicting claims between growing and expanding cities. 
 Id.
; 
City of Roanoke
, 111 S.W.3d at 630; 
Village of Creedmoor
, 808 S.W.2d at 618.  With the Municipal Annexation Act, the legislature created a statutory scheme, based upon the concept of ETJs, to determine whether a municipality may exercise jurisdiction over a particular area.  
City of Roanoke, 
111
 
S.W.3d at 630; 
Village of Creedmoor
, 808 S.W.2d at 618 (stating that whether a municipality first exercises jurisdiction over an area is no longer always determined by legal proceedings but by ETJ)
.  In doing so, it declared that the policy of this state is to designate certain areas as the ETJ of municipalities to promote and protect the general health, safety, and welfare of persons residing in and adjacent to those municipalities.  
See
 Act of April 29, 1963, 58th Leg., R.S., ch. 160, article I, § 3.A., 1963 Tex. Gen. Laws 447, 447 (current version at 
Tex. Loc. Gov’t Code Ann.
 § 42.001 (Vernon 1999)).

A municipality may annex property only if it is included within its ETJ or if the municipality owns the property.  
Tex. Loc. Gov’t Code Ann
. § 43.051; 
Boerne
, 111 S.W.3d at 27.  A municipality may not annex land included within another municipality
’
s ETJ without the other municipality
’
s consent. 
 Tex. Loc. Gov’t Code Ann.
 § 42.023; 
City of Murphy v. City of Parker
, 932 S.W.2d 479, 481 (Tex. 1996).  The size of the unincorporated area that a municipality is allowed to claim as its ETJ is determined by its population and defined by statute.  
Tex. Loc. Gov’t Code Ann
. 
§ 42.021; 
see supra
 note 3.  A municipality may expand its ETJ in three ways:  population growth, voluntary petition of a contiguous land owner, or extension of the municipal boundaries through annexation.  
Tex. Loc. Gov’t Code Ann.
 § 42.022(b)–(c).
(footnote: 6)  The expansion of one municipality’s ETJ by any of these three methods cannot include any area that extends into the existing ETJ of another municipality.  
Id.
 § 
42.022(c).

Under the current statutory scheme, municipalities have ninety days to complete the annexation process.  
Id
. § 43.064 (Vernon Supp. 2007).  The mere institution of annexation proceedings does not conclude the annexation process.  
City of San Antonio v. Boerne
, 61 S.W.3d 571, 576 (Tex. App.—San Antonio 2001), 
rev’d on other grounds
, 111 S.W.3d 22 (Tex. 2003); 
City of Arlington v. City of Grand Prairie
, 451 S.W.2d 284, 288 (Tex. Civ. App.—Fort Worth 1970, writ ref’d n.r.e.); 
see
 
Tex. Loc. Gov’t Code Ann.
 § 43.064.  Thus, a municipality does not acquire jurisdiction over property that is not otherwise within its ETJ until 
final passage
 of an annexation ordinance.  
City of Arlington
, 451 S.W.2d at 288.

Likewise, because the plain language of section 42.022(a) provides that ETJ “expands 
with
 the annexation,” a municipality’s ETJ does not correspondingly expand 
until
 final passage of an annexation ordinance, rather than when annexation proceedings are first initiated.  
Tex. Loc. Gov’t Code Ann.
 § 42.022(a) (emphasis added); 
City of Longview v. State ex rel
.
 Spring Hill Util. Dist
., 657 S.W.2d 430, 431 & n.2 (Tex. 1983); 
Boerne
, 61 S.W.3d at 576; 
cf
.
 Universal City v. City of Selma
, 514 S.W.2d 64, 70-71 (Tex. Civ. App.—Waco 1974, writ ref’d n.r.e.) (holding that ETJ attaches only upon completion of incorporation of city), 
disapproved of on other grounds by Alexander Oil Co. v. City of Seguin
, 825 S.W.2d 434 (Tex. 1991).
(footnote: 7)  In other words, there cannot be new ETJ until there are new city limits.  
Boerne
, 61 S.W.3d at 576.

Analysis

Granbury acknowledges that its ETJ did not expand to include the Disputed Tracts until it actually passed the first of the five sequential annexation ordinances on June 21, 2005; however, it contends that even though the Disputed Tracts were not included in its ETJ until that time, Cresson was nevertheless prohibited from expanding its ETJ into that area.  According to Granbury, the current statutory scheme is silent as to which city has priority over an area when one of the cities proposes to use the sequential annexation procedure used by Granbury here; therefore, the first-in-time rule should be applied as a gapfiller.  
See Village of Creedmoor
, 808 S.W.2d at 618 (stating that “[t]he principle of first-in-time priority is still important in municipal law,” but applying controlling statute—local government code section 42.041—to resolve appeal); 
cf
. 
City of Arlington
, 451 S.W.2d at 291-92 (applying first-in-time rule to determine which of two ordinances should control when both were initially invalid but later made valid by legislative validating acts).

However, the current statutes adequately address Cresson’s and Granbury’s competing claims, so there is no need to resort to the common law first-in-time rule as a gapfiller.  
Granbury was not entitled to assert jurisdiction over the Disputed Tracts until final passage of the first of its five sequential ordinances on June 21, 2005; under sections 42.022(c) and 43.051 of the local government code, it did not acquire any ETJ in the Disputed Tracts until its first annexation was complete.  
Tex. Loc. Gov’t Code Ann
. §§ 42.022(c), 43.051; 
City of Longview
, 657 S.W.2d at 431 & n.2; 
Boerne
, 61 S.W.3d at 576; 
cf
. 
Universal City
, 514 S.W.2d at 70-71.  Thus, when Cresson enacted its June 3, 2005 ordinances including the Disputed Tracts within its ETJ—which it was authorized to do under section 42.022(b)—no other city, including Granbury, had any jurisdictional rights to the Disputed Tracts.  It follows that when Granbury finally adopted the first of its five annexation ordinances on June 21, 2005, its ETJ could not expand into the Disputed Tracts under section 42.022(c) because the Disputed Tracts were already included within Cresson’s ETJ under section 42.022(b).
(footnote: 8)  Accordingly, Granbury’s final four June 21, 2005 ordinances purporting to annex the Disputed Tracts are void.  
See City of Waco v. City of McGregor
, 523 S.W.2d 649, 652, 654 (Tex. 1975); 
City of Houston v. Savely
, 708 S.W.2d 879,  887 (Tex. App.—Houston [1st Dist.] 1986, writ ref’d n.r.e.), 
cert. denied
, 482 U.S. 928 (1987).

We hold that Granbury’s final four June 21, 2005 annexation ordinances are void and that Cresson’s June 3, June 14, and June 28, 2005 ETJ expansion ordinances are valid.
(footnote: 9)  Accordingly, the trial court erred by granting summary judgment for Granbury.  We sustain Cresson’s three issues.

Because Cresson asks that we render judgment granting its competing motion for judgment and because Granbury raised several additional issues in response to Cresson’s summary judgment motion, we must also address those issues in determining whether the trial court properly denied Cresson’s motion.
(footnote: 10)
 In its response to Cresson’s motion for summary judgment, Granbury raised three matters that it contended create a fact issue precluding summary judgment: (1) that after Cresson’s June 3 ordinance was adopted, a member of the city council instructed a citizen who asked questions about the ETJ expansions that he would talk to her about the matter after the meeting and that “[
i
]
f
 a quorum of Cresson’s city council were present during this conversation, it would have been an illegal meeting under the Texas Open Meetings Act”; (2) that a hushed conversation occurred during the June 3 meeting between “a member of the governing body and another” concerning the ETJ expansions, at the very least raising a fact issue concerning a potential violation of the Open Meetings Act; and (3) that there is a fact issue concerning whether the agenda for the June 3 meeting was posted at least seventy-two hours beforehand because although the notice states that it was posted on May 31, 2005, it does not state the time it was posted.  [Emphasis added.]

The evidence pointed to by Granbury is insufficient to raise a fact issue as to whether Cresson provided the required seventy-two hours’ notice.  To be timely, the notice had to have been posted no later than 7:00 p.m. on May 31, 2005, 
see
 
Tex. Gov’t Code Ann
. § 551.043 (Vernon 2004); the meeting agenda notes only that it was posted on May 31, 2005.  Granbury did not bring forward any evidence indicating that a member of the public had tried to timely view the agenda but could not find it or that the agenda was not timely posted.  In fact, viewing the evidence in the light most favorable to Granbury, as we must, the only reasonable inference from this evidence is that the agenda was posted timely.  
Cf. City of Fort Worth v. Groves
, 746 S.W.2d 907, 914-15, 920 (Tex. App.—Fort Worth 1988, no writ) (holding evidence sufficient to prove that notice was not properly posted in place readily accessible to general public at all times—another requirement of the notice statute—when appellee testified he attempted to access posting places but courthouse doors were locked and deputy sheriff would not let him in, and evidence also showed that when courthouse was locked, public could not access without deputy sheriff, who was sometimes absent from his post making rounds).

The other Open Meetings Act violation allegations also fail to raise a fact issue.  As to the alleged conversation between a council member and a member of the public regarding the ETJ expansions, there is no evidence that the conversation actually occurred, only that in response to a question from a citizen, a council member asked the citizen if he could explain what was going on after the meeting was over.
(footnote: 11)  Nor is there evidence that if such a conversation did occur as proposed by the council member, that any other members of the council were present, only Granbury’s speculation that “[i]f a quorum . . . were present,” the meeting would have been illegal.  
See Joe v. Two Thirty Nine Joint Venture
, 145 S.W.3d 150, 164 (Tex. 2004); 
Martin v. Cadle Co
., 133 S.W.3d 897, 904 (Tex. App.—Dallas 2004, pet. denied).

Moreover, this alleged conversation would have taken place after the meeting and, thus, after the council had already voted in open session on the ETJ expansions.  Any post-vote deliberation could not have invalidated the prior, valid votes taken during open session.  
See Olympic Waste Servs. v. City of Grand Saline
, 204 S.W.3d 496, 504 (Tex. App.—Tyler 2006, no pet.); 
United ISD v. Gonzalez
, 911 S.W.2d 118, 128 (Tex. App.—San Antonio 1995) (op. on reh’g), 
writ denied
, 940 S.W.2d 593 (Tex. 1996).  This also applies to any conversations that might have occurred between or among council members during the public discussion portion of the meeting that occurred after the votes.
(footnote: 12)  
See Olympic Waste Servs.
, 204 S.W.3d at 504; 
United ISD
, 911 S.W.2d at 128.

Accordingly, we also hold that the trial court erred by denying summary judgment for Cresson.  We sustain all three of Cresson’s issues.

Expedited Mandate

While this motion for rehearing has been pending, Cresson filed a Motion for Expedited Issuance of Mandate and Motion for Sanctions.  In the motion, Cresson alleges that Granbury has continued to assert its jurisdiction within the Disputed Tracts despite our prior opinion and judgment holding that the Disputed Tracts are included within Cresson’s ETJ and, thus, that Granbury’s ordinances attempting to annex the Disputed Tracts are void.  Accordingly, Cresson asks this court to sanction Granbury and to issue mandate “immediately” to prohibit further action by Granbury with respect to the Disputed Tracts.  
See
 
Tex. R. App. P.
 18.1(c) (providing that court of appeals may issue mandate earlier than provided for in appellate rules “for good cause” on a party’s motion).  In a response, Granbury contends that Cresson has not shown good cause to issue the mandate early; Granbury also asserts that it “fully intends to appeal to the Texas Supreme Court if it is not successful before this [c]ourt.”

We decline to impose sanctions at this time.
(footnote: 13)  Although we believe that Cresson has shown good cause for the parties’ rights in the Disputed Tracts to be settled as quickly as possible, we are also mindful of Granbury’s representation to this court that it intends to file a petition for review in the supreme court.  Accordingly, we grant Cresson’s motion as follows:  if Granbury does not file a petition for review in the supreme court within the time periods set forth in rule 53.7, as they may be extended by the supreme court upon Granbury’s timely filing of a motion to extend, then mandate will issue immediately upon the expiration of the applicable rule 53.7 time periods, as they may be extended by the supreme court, 
see
 
Tex. R. App. P
. 18.1(a)(1), 53.7; if Granbury timely files a petition for review in the supreme court and that petition is denied, dismissed, or refused, then mandate shall issue immediately 

upon the expiration of time to file a motion for rehearing of such denial, dismissal, or refusal, as that time may be extended by the supreme court upon Granbury’s timely filing of a motion to extend, 
see
 
Tex. R. App. P
. 18.1(a)(2), 56.1(b)–(d), 64.1, 64.5.

Conclusion

Having sustained Cresson’s three issues on appeal, we reverse the summary judgment in favor of Granbury and render summary judgment in favor of Cresson.
 

TERRIE LIVINGSTON

JUSTICE

PANEL B: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

DELIVERED: January 10, 2008 

FOOTNOTES
1:
The areas proposed to be annexed were one mile in length and approximately 1,000 feet in width on either side of, and including, Highway 377.

2:
A map showing the areas described in the Resolution is attached to this opinion.

3:
A municipality’s ETJ is the unincorporated area that is contiguous to the corporate boundaries of the municipality and that is located within one mile of those boundaries in the case of a municipality with 5,000 to 24,999 inhabitants and within one-half mile in the case of a municipality with less than 5,000 inhabitants. 
 Tex. Loc. Gov’t Code Ann.
 § 42.021(1)-(2) (Vernon Supp. 2007).

4:
Granbury’s challenge to the June 14, 2005 expansion ordinance is based on the alleged invalidity of the June 3 ordinances.

5:
The record contains a letter opinion from the trial judge indicating that it was his opinion that Granbury’s “commencement of legal proceedings asserting legal authority over the territory in question resulted in its acquiring jurisdiction over such territory which cannot be defeated by [Cresson’s] subsequent attempted jurisdictional activity.”  In other words, the trial court decided that the first-in-time rule applied to, and resolved, the conflict here.

6:
A city may expand its ETJ when contiguous landowners request inclusion of their property within the city’s ETJ.  
Id
. 
§ 42.022(b).  

7:
But see Fuller Springs v. State ex rel. City of Lufkin
, 503 S.W.2d 351, 352-53 (Tex. Civ. App.—Beaumont 1973) 
(holding that passage of annexation ordinance on first reading—rather than final passage—operated to extend ETJ so as to assert authority over territory in question), 
rev’d on other grounds
, 513 S.W.2d 17 (Tex. 1974).

8:
Granbury contends that because the supreme court has approved the immediately sequential annexation process that it used here, the first-in-time rule should operate to “save” the entire area proposed to be annexed according to that process.  
See City of Longview
, 657 S.W.2d at 431 n.2.  But in 
City of Longview
, there was no competing claim to the as-yet-created ETJ resulting from the sequential annexations.  
Id
. at 431.  There is no question that Granbury’s ordinances annexing the Disputed Tracts would be valid if Cresson had not been able to properly include them within its ETJ by statute.

9:
Granbury’s challenge to the June 14, 2005 ordinance is contingent upon its argument that the June 3, 2005 ordinances are void; because we have determined that the June 3 ordinances are valid, its argument as to validity of the June 14 ordinances also fails.  Granbury also contended in its motion for summary judgment that the June 28, 2005 ordinance accepting Wise Asset #2 Ltd.’s property into Cresson’s ETJ is invalid because part of Wise Asset’s property is located within part of Granbury’s ETJ as expanded by its one valid June 21, 2005 annexation.  But the landowner agreement with Wise Asset upon which Cresson based its ordinance specifically states that it does not include “any portion . . . in the city limits or [ETJ] of the City of Granbury, Texas, at the time [the] Agreement is signed.”  Thus, the ordinance accepting Wise Asset’s property into Cresson’s ETJ could not have included any portion of that property located within Granbury’s ETJ and is, therefore, not invalid.

10:
Neither of the parties discusses these issues in their briefing, presumably because it is clear from the record that the trial court granted Granbury’s summary judgment upon application of the first-in-time rule.  However, because Cresson requests that this court render summary judgment in its favor—and because Granbury never expressly conceded these issues on appeal—we will address them in determining whether to render judgment for Cresson.  
See Comm’rs Court of Titus County v. Agan
, 940 S.W.2d 77, 80 (Tex. 1997).

11:
The citizen’s comments are inaudible on the audiotape, but the minutes of the meeting show that a citizen questioned, “[W]hat was going on?”  The minutes then state that Councilperson Cornett advised that “he will explain after the meeting.”  Our review of the audiotape indicates that the council person actually asked the citizen if he 
could
 explain after the meeting; another council person who had presided over the meeting (presumably the mayor) then advised the citizen that as a result of the votes previously taken at the meeting, Cresson had added to its ETJ.  These two responses are clearly audible on the audiotape and appear to have been made in open session.  An inaudible conversation then took place, apparently between one or more council members; however, we cannot discern what the discussion was about.

12:
There is only one other conversation on the audiotape of the June 3 hearing that is difficult to hear.  After one of the votes, in which all votes were “aye” and there were no “nay” votes, it appears that the mayor says that “The nays have it.”  An unidentifiable person asks him a question, and the mayor clarifies, “The yeas have it.”  From what we can discern of this conversation, there appears to have been no deliberation involved, only clarification of the result of the vote that had just occurred in open session.

13:
Cresson has also filed an Application for Writ of Injunction with this court, which is docketed as a separate original proceeding.  Cresson alleges the same facts in that proceeding but requests that this court enjoin Granbury from its alleged activities in the Disputed Tracts.  We are considering that proceeding separately from Cresson’s motion to expedite mandate.